RAYMOND WILLIS *et al.*, Plaintiffs-Appellees, *v.* THE MENARD COUNTY BOARD OF COMMISSIONERS *et al.*, Defendants-Appellants.

Fourth District   No. 14136

Opinion filed December 12, 1977.

Nolan Lipsky, State's Attorney, of Petersburg, for appellants.

William S. Hanley, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, and Robert Thomas Fleming, of Fleming, Messman, Lapan & O'Connor, of Bloomington, for appellees.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

After the defendant Menard County Board of Commissioners denied a special use permit for a limestone quarry to property owner Raymond Willis, he and the contract-purchaser of his property, Material Service Corporation, filed suit and obtained a judgment declaring that plaintiffs' 300-acre farm may be used for open pit mining of limestone and related activities. The County Board appeals from that judgment order.

Plaintiff Willis contracted to sell 300 acres of farm land to Material Service Corporation for $2,150 per acre contingent upon Willis obtaining a special use permit for operation of a limestone quarry on the site. After a public hearing, plaintiffs' petition for a permit was denied, and plaintiffs filed this action for declaratory judgment.

The Willis farm is bounded on the north by Illinois Route 123, on the east by Illinois Route 29, and on the west by farm land. Immediately south are a church and a few homes scattered along Indian Point Road. Two existing quarries are located southeast of the Willis tract. According to the uncontradicted testimony of James Bastion, plaintiffs' geologist, a valuable deposit of limestone lies under the Willis property, and Menard County is one of the few known locations in the world where a limestone deposit is near enough to the surface to permit open pit mining. A portion of this deposit is mined by the two existing quarries, and the Willis property is estimated to contain approximately 11 million tons of limestone.

The Willis farm is zoned A-1, agricultural. Under the Menard County Zoning Regulations, existing mining and quarrying operations are conforming uses in an A-1 agricultural district, but a new mining operation can be initiated only pursuant to Special Use Exception Permit. In addition, before the proposed mine can be placed in operation, Material Service Corporation must obtain permits from the Illinois Department of Mines and Minerals and from the Illinois Environmental Protection Agency. The Illinois Department of Transportation regulates the entrances onto the State highways, and blasting activities at the quarry are regulated by the Mine Enforcement Safety Administration of the United States Bureau of Mines.

Plaintiffs introduced extensive evidence as to the statewide need for quality limestone aggregate for use in construction, particularly highway construction. Material Service Corporation has had difficulty obtaining the stone it needs, and at times its suppliers have been unable to meet their contractual obligations. Plaintiffs also testified to the procedure that would be used to minimize vibration, fly rock, dust, and noise from the blasting and other operations at the quarry. Material Services uses a technique called "incremental blasting" which causes vibrations no greater than those caused by a person walking across a floor and which enables the maintenance of noise standards less than normal human speech. Furthermore, flying rock is eliminated. Dust control measures were also outlined.

Testifying for defendants were some of the nearby residents who objected to the creation of another quarry in the vicinity. Some of these objectors had purchased 5-acre lots from Willis for home sites and were noticeably irate at his failure to reveal that he was considering a sale of the remainder for quarry purposes. These witnesses testified about experiences with vibration, dust, noise and fly rock in the vicinity of the two existing quarries. For example, some reported broken or cracked windows, problems with dust, pollution of wells, and flying boulders landing near homes. Other witnesses expressed concern about a historic

church edifice located 170 feet south of the Willis property. On cross-examination, these witnesses indicated that they have never complained about these conditions to anyone.

Evidence was also introduced as to plaintiffs' plans for construction of a berm or dike planted with grasses and shrubs along the eastern and southern boundaries for the purpose of aesthetic appeal. Material Service also presented evidence of its plans for reclamation of the mined area pursuant to section 6 of the Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1975, ch. 93, par. 206), and its restoration to use as pasture land.

The trial court found that defendants' denial of a special use permit was so clearly arbitrary and unreasonable as to result in confiscation of property in violation of plaintiffs' constitutional rights. Specifically, the court stated in its order:

"The character of the neighborhood, the use to which nearby property is put, the extent to which the value of the Willis property is diminished by the denial of the special use exception permit, and the gain to the public from the mining of the limestone aggregate compared with the hardship imposed on the complaining property owners, outweigh the presumption of proper exercise of legislative discretion by the defendant County Board of Commissioners."

The court then ordered defendants to issue a permit to plaintiffs, and this appeal followed.

Defendants contend that the County Board's denial of a special use permit to quarry limestone was reasonable and proper because there was no evidence of a definite need for limestone within the boundaries of Menard County, because there was evidence that a quarry would be harmful to the public health and safety, and because the Willis farm is highly productive as now utilized for row crop agriculture.

The outstanding feature of this case, unlike the usual zoning dispute, is that the Willis farm is the only location where the underlying limestone deposit can be surface mined, so to deny a special use permit is to deny the removal of the valuable mineral deposit in its entirety. (See *Midland Electric Coal Corp. v. County of Knox* (1953), 1 Ill. 2d 200, 115 N.E.2d 275.) Thus the interest of the general public must be considered. Even though additional supplies of limestone may not at present be needed within the boundaries of Menard County, the evidence in the record clearly indicates that a shortage exists in central Illinois, and that the utilization of the limestone at the Willis farm location would serve the public convenience. *Frelk v. County of Kendall* (2d Dist. 1976), 44 Ill. App. 3d 253, 357 N.E.2d 1325.

In a factually similar case the appellate court said:

"An important uniqueness is found in this case that is rarely present

in others. Generally, the denial of a reclassification of an area to permit a commercial or other type of operation to be established on the premises does not prevent the same activity at another location in the vicinity. Here, this is not so. It is undisputed that this land contains an abundance of valuable sand and gravel. If its removal is denied, then the aggregate will be lost to both the owner and the public. This uniqueness must be considered in applying the established factors in determining if the ordinance is so clearly arbitrary and unreasonable as to result in confiscation in violation of constitutional rights of the owner.

\* \* \*

In the light of all of the factors to be considered and the interest of the public generally, we are of the opinion that the action of the Board on the petition was arbitrary and unreasonable and that the plaintiff has sustained its burden." *Elmhurst-Chicago Stone Co. v. County of Kane* (2d Dist. 1970), 129 Ill. App. 2d 190, 201-02, 262 N.E.2d 612, 617.

■■■ Certain factors must be considered in every zoning case: the character of the neighborhood, the use of nearby property, the extent to which property values are diminished by the zoning restrictions, and the gain to the public compared with the hardship imposed on the complaining property owners. (*Goeller v. City of Chicago* (1st Dist. 1968), 103 Ill. App. 2d 67, 243 N.E.2d 444.) The evidence here showed that the neighborhood is sparsely populated and primarily agricultural for at least 1½ miles in all directions, that two quarries already exist nearby, that the Willis farm would diminish substantially in value if the permit is denied, and that additional sources of quality limestone aggregate are needed in the general area. These factors were found to outweigh the hardship which the proposed quarry would place upon the objectors. As was noted in *Frelk v. County of Kendall*, not every mineral deposit located in the State must be mined, but nevertheless, denial of a special use permit must have a real and substantial relation to the public health, safety, morals or general welfare. (See also *Pioneer Trust & Savings Bank v. County of McHenry* (1968), 41 Ill. 2d 77, 241 N.E.2d 454.) Applying these principles to the facts of this case, we believe the trial court properly found that plaintiffs overcame the presumption of proper exercise of legislative discretion, and correctly ordered a special use permit to issue.

We therefore affirm the judgment of the Circuit Court of Menard County.

Affirmed.

STOUDER and SCOTT, JJ., concur.